Argued and submitted May 17, 1985, at Pendleton, Oregon, affirmed November 14,
1985, reconsideration denied January 10, petition for review denied February 25, 1986
(300 Or 562)

**STANFILL,**
*Respondent,*

*v.*

**TAT (U.S.A.) CORP.,**
*Appellant,*

**DAVIS et al,**
*Respondents.*

(82-4-383; CA A31133)

709 P2d 717

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs were Mautz & Hallman, Pendleton, and James F. McAteer, and Lenihan, Ivers & McAteer, Seattle, Washington.

Jas. Jeffrey Adams, Portland, argued the cause for respondents Stanfill, Davis and Good Earth, Inc. On the brief were Michael A. Lehner and Mitchell, Lang & Smith, Portland.

Harold A. Fabre, Pendleton, argued the cause and filed the brief for respondent Wagner.

Before Richardson, Presiding Judge, and Warren and Young, Judges.

WARREN, J.

## WARREN, J.

This appeal by defendant TAT (U.S.A.) Corporation (TAT), presents issues of contract damages, admission of evidence and which party prevailed at trial. Plaintiff, seller, brought this action against TAT for breach of a contractual obligation to purchase export quality logs. TAT counterclaimed, alleging mistake, misrepresentation and breach of contract. TAT also alleged that defendants Davis and Wagner were plaintiff's partners in the logging operation.

In a special verdict, the jury accepted plaintiff's claim, rejected each of TAT's claims and also rejected TAT's partnership allegations. The jury also found plaintiff's damages to be $204,915.69. However, because TAT had advanced plaintiff $350,000 under the contract, and because plaintiff had conceded that the advance was due TAT regardless of the outcome of this action, a net judgment of restitution was entered for TAT. Nevertheless, the court concluded that plaintiff was the prevailing party and awarded her attorney fees under the contract.

■　　TAT first contends that plaintiff was not entitled to recover lost profits under ORS 72.7080(2).[1] Lost profits may be recovered if the market price-contract price measure of damages in ORS 72.7080(1) would not put the aggrieved seller in as good a position as performance would have done. Thus, beneficiaries of the lost profits measure are typically lost volume sellers, jobbers and manufacturers of uncompleted goods. White and Summers, *Handbook of the Uniform Commercial Code,* §§ 7-10 (2d ed 1980). However, a seller may also recover lost profits when there is no existing market in which

---

[1] ORS 72.7080 provides:

"(1) Subject to subsection (2) of this section and to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in ORS 72.7100, but less expenses saved in consequence of the buyer's breach.

"(2) If the measure of damages provided in subsection (1) of this section is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in ORS 72.7100, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

the seller could mitigate damages. Such a market is equivalent to no market. *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 525, 503 P2d 482 (1972).[2]

TAT argues that a market existed for export timber at the time and place of tender; it notes that even plaintiff's counsel provided detail on the market price for export timber. However, the evidence supports the conclusion that, although there may have been a market for export timber at the time and place of tender, it was not well established and was rapidly failing and vanishing. On that evidence, it was a question of fact whether there was a market against which to measure damages. The evidence would justify an award of damages under either ORS 72.7080(1) or (2), and there was no error in submitting both measures to the jury.[3]

■     TAT next maintains that plaintiff's lost profits calculation was erroneous, because it failed to credit proceeds from the resale of some of the export quality logs. ORS 72.7080(2) requires, in the lost profits calculation, "due credit for payments or proceeds of resale."

The evidence established that plaintiff received approximately $14,000 from the resale. It does not follow, however, that defendant is automatically entitled to a credit against the lost profits calculation for the proceeds of the

---

[2] As noted in the text, in *Timber Access,* the court reasoned that the lost profits measure was available to the seller, because there was no market available which, "if availed of, would have substantially mitigated [the seller's] damages." 263 Or at 525. However, ORS 72.7080(1) does not require the seller to avail itself of the market. Rather, it provides that the market is simply a measure by which to calculate damages when a seller chooses not to resell. Thus, that the market would not substantially permit mitigation of damages has no effect on whether the measure of damages in ORS 72.7080(1) would put the seller in as good a position as performance would have done, which is the precondition for obtaining the lost profits measure in ORS 72.7080(2). However, we do not question the court's result because, if there is no market against which to *measure* damages, or if the market is vanishing, then the market price-contract price measure would be inadequate. It would be inadequate in the first instance—no market—because the measure could not be taken. It would be inadequate in the second instance—a vanishing market—because ORS 72.7080(1) requires that the measure be taken at the time and place of tender; if a seller's damages are fixed at that time but he then confronts a falling market, he will not be put in as good a position as performance would have done.

[3] The trial court instructed the jury in determining damages to decide if the recovery under ORS 72.7080(1) would be adequate and, if not, to apply ORS 72.7080(2). TAT did not except to the instructions. The verdict form does not indicate which rule of damages was applied, but the damages found approximate plaintiff's claim of lost profits.

resale under the facts of this case. We will assume that, in the absence of other facts, all of the proceeds of the resale were required to be credited against lost profits, unless there was a showing that some part was not "due." The jury was provided with evidence of the proceeds of resale, evidence of the cost of producing the logs resold and evidence that the proceeds went into an escrow account and were distributed to the parties pursuant to the escrow instructions. The parties do not contend that the proceeds were not distributed properly under those instructions. On this record, we cannot say that any proceeds were due the buyer after distribution pursuant to the escrow instructions. Moreover, the trial court instructed the jury to credit against lost profits any proceeds from the resale that it found were due. No exception was taken to the jury instructions, and from the verdict it appears that the jury found nothing due. TAT points to nothing in the record which would permit us to hold that that was an impermissible findings.

■        TAT's third argument is that the court erred in denying its motion to limit damages to $66,272.00. As noted above, TAT contracted with plaintiff to purchase logs of export quality. Because different parts of the same tree will generally produce logs of export and domestic quality, the parties anticipated simultaneous logging and marketing of the export and domestic quality timber. It was also fully understood that, although the export quality logs would be sold to TAT for a profit, the domestic logs would necessarily be sold to third parties at a loss.

The damage award reflected lost profits on the export quality timber. TAT does not dispute that profits were lost because of its breach. Nevertheless, TAT contends that the court erred in not requiring plaintiff to take into account losses it did not suffer because, as a result of the breach, it did not sell the domestic logs. TAT's contention is grounded in the principle that all contractual remedies provided for by the Uniform Commercial Code seek the end that the aggrieved party be put in as good a position as if the other party had fully performed, but no better. ORS 71.1060(1). However, the contract between plaintiff and TAT was for export quality timber only. Other than a fifty dollar per thousand stumpage credit about which there is no dispute, TAT had no legitimate interest with respect to plaintiff's disposition of the domestic

quality timber, whether at a profit or a loss. Thus, the court did not err in denying TAT's motion to limit damages.[4]

■ ■     The next issue is whether the trial court erred in allowing the introduction of documentary and testimonial evidence which suggested that TAT's actions had caused plaintiff's husband to die during the pendency of this litigation. TAT argues that the introduction of that evidence enabled plaintiff to turn an action for breach of contract into an action for wrongful death. Defendant objected to the document on the grounds that it contained irrelevant and prejudicial matter. However, because the document also contained relevant and non-prejudicial evidence, and the objection was to the document as a whole, it was not error to overrule the objection. *Meislahn v. Demorest,* 48 Or App 631, 617 P2d 322 (1980). Further, because the document was properly admitted, no separate claim of error can be made that it was read to the jury.

■     TAT finally contends the trial court erred in concluding that plaintiff was the prevailing party and awarding her attorney fees as provided in the contract. TAT argues as follows: (1) The language of the parties' contract does not convey any particular meaning to the phrase "prevailing party" and thus the meaning to be given the phrase is found in ORS 20.096(5), *Carlson v. Blumenstein,* 293 Or 495, 500 n 3, 651 P2d 710 (1982); (2) the words of ORS 20.096(5) are dispositive that a prevailing party is the one "in whose favor final judgment or decree is rendered"; and (3) TAT obtained a final judgment in its favor.

TAT's argument is accurate but inapposite, because it presumes that the party in whose favor judgment was rendered either successfully brought a claim on a contract or successfully defended against one. TAT, however, did neither.

In *America Petrofina v. D & L Oil Supply,* 283 Or 183,

---

[4] In any event, the damage award is not a windfall for plaintiff but in fact puts her in the position that TAT's performance would have done. The situation must be perceived from the "time and place of tender." ORS 72.7080. At that time, there was no viable market for the export timber, and the domestic timber could only be sold at a loss of approximately $150,000. Thus, because of TAT's breach, plaintiff confronted a $150,000 loss on the operation, rather than realizing a profit of $66,000. If that "loss" is offset by the damage award, $204,915.69, the result approximates what plaintiff would have realized if TAT had performed.

583 P2d 521 (1978) the plaintiff stated claims for breach of contract and *quantum meruit.* In a trial to the court, the breach of contract claim was rejected, but the plaintiff prevailed on the *quantum meruit* claim and was awarded damages of exactly one-half the amount prayed for under the contract claim. However, because the defendant had paid over to the plaintiff an amount greater than plaintiff's damages, the trial court entered a judgment for defendant for the difference and concluded that the defendant was the prevailing party. The Supreme Court reversed, reasoning that,

> "* * * Because of the sequence of events which we have described * * * we do not attach the usual importance to the fact that the final money judgment * * * was rendered in favor of [defendant] * * *." 283 Or at 199.

We can discern no important distinction between *American Petrofina* and this case. Therefore, we conclude that plaintiff is the "prevailing party."

Affirmed.[5]

---

[5] Because we affirm, it is unnecessary for us to address TAT's assignment of error regarding the issue of partnership. This is so, not because plaintiff has apparently paid the judgment of restitution; because TAT has failed to prevail on any of its claims, the issue is moot.