STEWART & STEVENSON SERVICES,
INC., Appellant,

v.

ENSERVE, INCORPORATED and
CMW, Inc., Appellees.

No. C14–85–548–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 21, 1986.

Rehearing Denied Oct. 16, 1986.

Carl T. Schultz, Glenn W. Patterson, Houston, for appellant.

William E. Matthews, Vicki A. Birenbaum, Houston, for appellees.

Before SEARS, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Stewart & Stevenson Services, Inc., (Stewart & Stevenson) appeals a judgment in favor of Enserve, Incorporated, (Enserve) and Clarksville Machine Works, Inc., (CMW) for $462,475.83 in actual damages together with prejudgment interest and attorney's fees. We affirm.

Appellees' suit alleged breach of a May 6, 1981, letter agreement between Stewart & Stevenson and Enserve. Appellees' position is that the agreement obligated Stewart & Stevenson to purchase fifty (50) well-servicing pumps within a required delivery schedule. Stewart & Stevenson maintains the agreement required it to purchase only ten (10) pumps, but that after learning of appellees' position, it agreed to purchase an additional eight pumps. Appellant affirmatively pled its agreement to accept the extra eight pumps was an accord and satisfaction or modification of the May 6 letter. The case was submitted to a jury in ten special issues. Both parties moved for entry of a judgment on the jury's verdict.

The principal issues before us are: (1) Has appellant waived its right to complain of sufficiency of the evidence to support the jury's verdict? (2) Which UCC remedy is available to Enserve and CMW? (3) Are certain jury issues in fatal conflict? (4) Is the May 6, 1981, letter agreement too indefinite to enforce?

Stewart & Stevenson is a manufacturer of oilwell stimulation equipment. A major component of these units is a high-horsepower pump. Enserve, Inc., is a holding company with main offices in Houston. One of Enserve's businesses is Clarksville Machine Works, Inc. (CMW). In March 1981 Robert Kietzman, president of Enserve and chairman of CMW, and Don Dixon, chairman of Enserve and a director of CMW, visited Stewart & Stevenson's facility in Dallas and became interested in manufacturing high-horsepower pumps for Stewart & Stevenson. Stewart & Stevenson representatives visited CMW's facilities in Arkansas and provided a sample pump. Discussions continued and culminated in a May 4, 1981, breakfast meeting in Houston. The result of those discussions was a letter dated May 6, 1981, from Joe Manning, president of Stewart & Stevenson, to Enserve. The letter, with minor amendments, became the written agreement of the parties.

The letter agreement, in part, states: S & S [Stewart & Stevenson] will place an open purchase order ... with CMW for a total purchase of fifty (50) AWS Design Pumps, with ratings and delivery dates as determined by S & S [Stewart & Stevenson] and in accordance with CMW's general production capability.

The price of the first ten pumps was to be equal to the net price to Stewart & Stevenson of pumps provided by another manufacturer. The price of the remaining pumps was to be negotiated between seller and buyer after a cost analysis of the first ten pumps. The pumps were to be available in four horsepower ratings: 1000, 1300, 1600 and 1800. The parties agreed that Stewart & Stevenson "shall specify the date of delivery ... in accordance with the following schedule:

| No. of Units/Month | Delivery to Commence |
| --- | --- |
| 1st unit for evaluation | 5 months after order |
| 1–3 units/month | 6 months after order |
| 4–6 units/month | 9 months after order" |

At the slowest rate under the schedule all fifty pumps would have been delivered by December 1982. CMW delivered the first pump in October 1981 and it was approved by Stewart & Stevenson in November 1981.

That winter the oil industry began to suffer a severe downturn. After Stewart & Stevenson asked CMW to slow down its manufacturing schedule, CMW proposed in January 1982 a revised schedule. In March 1982 CMW delivered the twelfth and thirteenth pumps. Stewart & Stevenson refused to unload the delivery trucks and sent the pumps back to CMW. CMW and Enserve officials attempted to persuade Stewart & Stevenson to take more pumps because vendors who had supplied or held orders for component parts for the pumps were demanding payment from CMW. By a letter dated November 19, 1982, Stewart & Stevenson agreed to accept delivery of eight more pumps from CMW. However, Stewart & Stevenson has refused to purchase any additional pumps from CMW.

The dispute is whether the May 6, 1981, letter agreement obligated Stewart & Stevenson to purchase ten pumps, as Stewart & Stevenson contends, or fifty pumps, as CMW contends. Three Stewart & Stevenson witnesses testified that the parties had a verbal agreement that the purchase order was "firm" for only ten pumps. They say Stewart & Stevenson agreed to write an order for fifty pumps only so that CMW could use the contract to secure financing. All three witnesses had a different version as to when and where this verbal agreement was reached. Kietzman and Dixon testified that they never agreed that Stewart & Stevenson would be obligated for only ten pumps. Apparently the jury believed the CMW witnesses.

In answering special issues the jury found: (1) Stewart & Stevenson was liable to Enserve and CMW for breach of contract; (2) as a result of Stewart & Stevenson's failure to comply with the contract Enserve and CMW suffered $392,000 in damages for costs reasonably incurred, $147,975.83 for incidental damages, and $0 for lost profits; (3) Enserve and CMW relied to their detriment on Stewart & Stevenson's promise to purchase at least 50 pumps; (4) Enserve and CMW suffered no damages by acting in reliance on the promises of Stewart & Stevenson.

The jury failed to find: (1) the November 19, 1982, agreement was intended by the parties to be an accord and satisfaction of Stewart & Stevenson's liability; (2) Enserve and CMW waived certain rights under the contract. These issues were submitted by appellant as affirmative defenses.

After trial, Stewart & Stevenson, in a rather unusual move, filed a motion for entry of judgment "in accordance with the jury's findings." The motion listed all of the jury's issues and contained no alternative pleas to disregard any of the findings.

Eight points of error contain complaints about the state of the evidence. Appellant contends there is no evidence or insufficient evidence to support the jury's findings concerning breach of contract and damages for costs reasonably incurred. Appellant also claims the jury's conclusions concerning waiver as well as those relating to accord and satisfaction are contrary to the great weight and preponderance of the evidence and that the evidence conclusively proved those affirmative defenses. We first address appellees' contention that appellant, Stewart & Stevenson, has waived the right to appeal these evidentiary points

because it asked the trial court to enter a judgment on the jury's verdict.

Ordinarily, a motion for judgment on the verdict is an affirmation that the findings of the jury are supported by competent evidence, *Whitehead v. Reiger*, 6 S.W.2d 745 (Tex.Comm.App.—1928, judgmt adopted), leaving the movant in no position to question the legal or factual sufficiency of the evidence. A party should not be able to take one position before the trial court and the opposite position on appeal. *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex.1984).

Stewart & Stevenson asserts that its position at the trial court level and on appeal has not changed because Stewart & Stevenson is relying on UCC section 2.708(a) as the proper measure of damages. Special Issue 2 regarding damages is premised on the applicability of section 2.708(b). *See* Tex.Bus. & Com.Code Ann. § 2.708 (Tex. UCC) (Vernon Supp.1986). Stewart & Stevenson claims that at the time of the motion for judgment there had been no ruling on which subsection applied and that it asked for judgment on the verdict based on the jury finding of no lost profit.

It appears from the record that the trial court did rule that subsection (b) applied when it accepted Enserve's wording of Special Issue 2 (contract damages issue) over Stewart & Stevenson's objection. Of course this ruling was before Stewart & Stevenson moved for judgment on the verdict.

Stewart & Stevenson relies upon *Miner-Dederick Construction Corp. v. Mid-County Rental Services, Inc.*, 603 S.W.2d 193 (Tex.1980). In that case the parties disputed how to interpret the jury's findings. Miner-Dederick convinced the trial court that damages under the findings would be zero. Judgment was entered that Mid-County take nothing. When Mid-County appealed arguing another interpretation of the jury's findings, Miner-Dederick made a cross-point challenging the sufficiency of the evidence to support a jury finding under that adverse interpretation. The Supreme Court found that Miner-Dederick's

position before the trial court was consistent with its argument on appeal and should be allowed to pursue its cross-point.

Stewart & Stevenson does not dispute how to interpret the jury's findings. The dispute is over what UCC measure of damages should apply. This dispute concerns the special issues involving contract breach and damages. It has nothing to do with the issues regarding waiver and accord and satisfaction. *Miner-Dederick* is not applicable.

The Supreme Court has said this about a litigant who moved for judgment on a verdict while attempting to preserve a right to appeal:

> We disapprove, however, Litton's argument that it reserved the right to complain about the judgment, because it accompanied its motion for judgment with a brief in which it took back what it urged in its motion. Litton's trial brief that accompanied its motion reserved the right to 'challenge any adverse judgment based upon the verdict.' We disapprove a practice by which a party, by motion, induces the trial court on the one hand to render a judgment, but reserves in a brief the right for the movant to attack the judgment if the court grants the motion. Litton could not have it both ways.

*Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d at 322.

■ Stewart & Stevenson is also attempting to "have it both ways." First it moved for judgment on the verdict and then attempted to preserve no evidence and insufficient evidence points of appeal by filing a motion for new trial once judgment was rendered on the verdict. The attempt has failed. We accordingly overrule points of error two, three, seven, eight, nine, ten, twelve and thirteen.

■ In point of error eleven appellant contends that an accord and satisfaction exists as a matter of law by reason of the November 19, 1982, agreement wherein it agreed to accept delivery of eight more pumps. The defense of accord and satisfaction rests upon a new contract in which

the parties specifically agree to the discharge of one's existing obligation by means of a lesser payment. *Industrial Life Insurance Co. v. Finley*, 382 S.W.2d 100, 104 (Tex.1964). The test has been described as follows:

> There must be an unmistakable communication ... that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain (citations omitted); that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation.

*Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969).

The November agreement states that Stewart & Stevenson and CMW both "retain all of the rights and responsibilities of the purchase order # D–21915 dated May 6, 1981, a portion of which has since been cancelled." A document in which the parties expressly provide that each retains rights under the original contract and that only part of contract is cancelled cannot qualify as an accord and satisfaction. Point of error eleven is overruled.

The issue concerning the proper UCC remedy arises under several of appellant's points of error, many of which have been waived. We address the question in response to points of error four and fourteen in which appellant complains that the damages awarded are excessive and the judgment places appellees in a better position than if the contract had been performed.

After it became clear that Stewart & Stevenson would not purchase all fifty pumps under the May 6 letter-agreement, CMW ceased manufacturing and attempted to withdraw outstanding orders it had placed for component parts. There was virtually no market for the pumps because of the severe depression in the oil industry.

Stewart & Stevenson maintains that the measure of damages should be the difference between the market price at the time and place for tender and the unpaid contract price as the UCC provides in section 2.708(a). CMW convinced the trial court to frame the jury issue on damages in terms of section 2.708(b). Section 2.708 reads:

> (a) Subject to Subsection (b) ... the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter, ... but less expenses saved in consequence of the buyer's breach.
>
> (b) If the measure of damages provided in Subsection (a) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter, ... due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Tex.Bus. & Com.Code Ann. § 2.708 (Tex. UCC) (Vernon Supp.1986). Appellant's main contention is that CMW had failed to demonstrate that the measure of damages provided for in subsection (a) is inadequate and therefore cannot invoke subsection (b).

There are apparently no Texas cases interpreting this provision of the UCC. Several commentators have complained that the UCC seller's remedy provisions are inadequately drafted and do not give a straightforward remedy for sellers like CMW who stop production of goods being specially manufactured for a breaching buyer. *See* Childress & Burgess, *Seller's Remedies: The Primacy of UCC 2–708(2)*, 48 N.Y.U.L.Rev. 833, 863–65 (1973); Speigel & Clay, *Seller's Recovery of Overhead Under UCC Section 2–708(2): Economic Cost Recovery Theory and Contract Remedial Policy*, 57 Cornell L.Rev. 681, 693–94 (1972); Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two*, 73 Yale L.J. 199, 273 (1963).

■ These commentators essentially conclude through a process of elimination that no other UCC provision gives a seller like CMW an adequate remedy, so 2–708(b) must apply. *See also,* Anderson, *Mapping the Labyrinth of Seller's Damages,* 10 Litigation 10, 11 (1983).

One reason section 2.708(a) cannot apply to sellers like CMW is that it is impossible to prove market price minus contract price because "an unfinished good has no appropriate market." Childress & Burgess, *supra,* at 863–64. This was especially the case for CMW because of the sudden deterioration of oilfield business. Section 2.704(b) gave CMW the option of leaving the goods unfinished. Tex. Bus. & Com. Code Ann. § 2.704(b) (Tex.UCC) (Vernon 1968). Stewart & Stevenson does not complain that CMW's decision to cease manufacture was commercially unreasonable. The code cannot be construed to give the seller an option not to complete but then provide no way to measure damages if he does choose to halt production. If there is a market for the goods, the seller's decision not to complete would probably be commercially unreasonable.

We note that courts in other states have applied subsection (b) in situations in which a seller/manufacturer ceased production after the buyer's breach. *Scullin Steel Co. v. Paccar, Inc.,* 708 S.W.2d 756 (Mo.Ct. App.1986); *Autonumerics, Inc. v. Bayer Industries, Inc.,* 144 Ariz. 181, 696 P.2d 1330, 1340 (Ct.App.1984); *Bead Chain Manufacturing Co. v. Saxton Products, Inc.,* 183 Conn. 266, 439 A.2d 314, 320 (1981).

Courts have also found subsection (a) inapplicable when the relevant market has disintegrated to the point that the seller could not mitigate his damages by entering it. *Timber Access Industries Co. v. U.S. Plywood-Champion Papers, Inc.,* 263 Or. 509, 503 P.2d 482, 490 (1972); *Stanfill v. TAT (U.S.A.) Corp.,* 76 Or.App. 332, 709 P.2d 717, 718 (1985).

The key to any analysis should be the underlying objective of the UCC remedy provisions stated in section 1.106(a): "[T]he remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." Tex.Bus. & Com.Code Ann. § 1.106(a) (Tex.UCC) (Vernon 1968).

■ This leads to Stewart & Stevenson's complaint that the remedy given CMW puts it in a better position than if the contract had been performed because CMW would have lost money had performance continued and the $392,000 award for costs reasonably incurred did not account for savings realized by the breach. Stewart & Stevenson claims, "It is undisputed that Plaintiff's cost of performance exceeded market price. In other words Plaintiffs would have lost money had they been required to perform."

CMW presented at trial figures for estimated lost profits due to Stewart & Stevenson's breach. One estimate of $216,856 was based on a sales price of $70,000 for the last thirty-one pumps because that was the price paid by Stewart & Stevenson for the eight pumps bought under the November 19, 1982, agreement. Another estimate of $560,856 was based on prices actually paid by Stewart & Stevenson on nineteen pumps and then on market prices at the time the pumps would have been delivered under the contract's original schedule assuming the slowest rate.

When it claims that CMW would have lost money, Stewart & Stevenson is apparently comparing CMW'S estimated costs of production to the prices quoted by a competitor in 1983. The schedule in the May 6, 1981, letter agreement provided for a minimum as well as a maximum number of pumps to be delivered per month. The contract should have been completed by December 1982. At prices in December 1982, CMW would have made a profit if its cost estimates were correct.

■ The jury found in Special Issue 2a that CMW's lost profits amounted to $0, but that does not necessitate a conclusion that CMW would have lost money had the contract been completed.

Finally, we note that appellant somewhat contradicts itself in arguing that the judgment places CMW in a better position than if the contract had been performed. Appellant states that a seller should only recover his investment made in the bargain (reliance) and the net gain prevented by the breach (profits). Costs reasonably incurred as provided by section 2.708(b) is simply another way of saying the seller recovers his investment made in the bargain. Costs reasonably incurred means reliance damages. Childress, *supra*, at 859–60. Points of error four and fourteen are overruled.

This brings us to point of error five in which appellant seeks a new trial because of alleged irreconcilable conflict in the jury answers to Special Issues 2 and 4. Under Special Issue 2 the jury found damages for costs reasonably incurred and incidental damages due to breach of contract. Special Issue 4 was submitted under CMW's alternative cause of action of promissory estoppel. The finding was that CMW suffered nothing in damages by acting in reliance on the promises made by Stewart & Stevenson.

In reviewing jury findings for conflict, the threshold question is whether the findings are about the same material fact. *Bender v. Southern Pacific Transportation Co.*, 600 S.W.2d 257, 260 (Tex. 1980). A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Little Rock Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949); *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949).

Although appellant argues that costs reasonably incurred and incidental damages are the same as damages suffered in reliance on promises made, the jury may not have realized the connection. Special Issue 2 directed the jury's attention to monetary losses suffered as a result of Stewart & Stevenson's failure to comply with the contract, including lost profits, incidental damages, due allowance for costs reasonably incurred and due credit for payment or proceeds of resale. The jury was instructed that "incidental damages include commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the breach, in connection with return of resale of the goods or otherwise resulting from the breach."

In contrast, Special Issue 4 referred only to damages "suffered by acting in reliance on the promises, if any, of Stewart & Stevenson," without listing any of the specific items or types of losses contained in the instruction to Special Issue 2. The widely varying instructions may have led the jury to believe that these represented entirely different types of damages.

The jury may also have reasonably considered that CMW did not suffer any damages by "acting in reliance" on Stewart & Stevenson's promises because it had already found that an actual contract existed, was breached, and resulted in certain damages. We hold that the jury answers are not in irreconcilable conflict.

Another reason the jury findings are not in conflict is that the trial court could have properly disregarded findings under Special Issues 3 and 4. Appellees submitted Special Issues 1 and 2 under their breach of contract theory of recovery and Special Issues 3 and 4 under their alternative theory of promissory estoppel. When a legally sufficient contract exists, the theory of promissory estoppel becomes inapplicable. *Prince v. Miller Brewing Co.*, 434 S.W.2d 232, 240 (Tex.Civ.App.— Houston [1st Dist.] 1968, writ ref'd n.r.e.).

Appellant uses point of error six to complain that the trial court should have included an issue asking the jury to find the date of breach. Appellant argues that without a finding on the date of the breach there is no basis upon which to determine what point in time incidental damages were to be calculated. Appellant claims that it requested such an issue, but since no re-

fused issues have been included in the appellate record, the requested issue cannot be considered on appeal. *See Bob Robertson, Inc. v. Webster*, 679 S.W.2d 683, 688 (Tex.App.—Houston [1st Dist.] 1984, no writ). Appellant's objections to the charge recorded in the statement of facts do not include any complaint concerning the date of breach. No error has been preserved. *See Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 719 (Tex.Civ.App. —Corpus Christi 1980, writ ref'd n.r.e.); Tex.R.Civ.P. 273, 274. Point of error six is overruled.

We turn now to point of error one in which appellant contends the trial court erred in denying its motion for judgment on the verdict because the contract is too indefinite to provide a reasonably certain basis for giving an appropriate remedy. This point was argued in conjunction with points of error seven and eight, which we have already held were waived. Appellant refers us to section 2.204 of the UCC which provides:

> (c) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

Tex.Bus. & Com.Code Ann. § 2.204(c) (Tex. UCC) (Vernon 1968).

■ If appellant is arguing that it never formed a contract with appellees, we think it waived error when it allowed the court to instruct the jury that "The parties to the lawsuit agree that they entered into contracts dated May 6, 1981...."

The UCC defines contract as the "total legal obligation which results from the parties' agreement as affected by this title and any other applicable rules of law." Tex. Bus. & Com.Code Ann. § 1.201(11) (Tex. UCC) (Vernon 1968). We understand appellant's argument to be that, although it did make an agreement, Stewart & Stevenson is not legally obligated under the UCC because there is no reasonably certain basis for giving an appropriate remedy.

In urging its point, appellant notes these provisions in the contract: (1) The price of the last forty pumps was to be negotiated after CMW provided a cost analysis of the first ten pumps. If no price was agreed upon, the purchase order was to be cancellable by either party without penalty. (2) Stewart & Stevenson was to specify the number, rating and delivery date of the pumps.

We agree that these matters create a degree of indefiniteness in the agreement, but this can be resolved in light of the record, keeping in mind that the UCC requires parties to act in good faith to carry out contract terms. "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Tex.Bus. & Com.Code Ann. § 1.203 (Tex.UCC) (Vernon 1968). *See City of Louisville v. Rockwell Manufacturing Co.*, 482 F.2d 159 (6th Cir.1973).

■ The contract clearly does not fail for indefiniteness because it left open the price of the last forty pumps. The UCC specifically provides that "parties, if they so intend, can conclude a contract for sale even though the price is not settled." Tex. Bus. & Com.Code Ann. § 2.305(a) (Tex. UCC) (Vernon 1968). If the parties left the price to be agreed and they fail to agree, the price is a reasonable price at the time for delivery. Tex.Bus. & Com. Code Ann. § 2.305(a)(2) (Tex.UCC) (Vernon 1968).

■ Appellant states that not only the price was unsettled but so was the time for delivery. It is true that an exact delivery date for each pump was not set out in the contract. At the slowest rate under the approximate schedule all the pumps would have been delivered by December 1982. A court could fashion a reasonable remedy by determining a fair price for the pumps at or around December 1982. In fact, the parties were able to agree to a price for the eight pumps purchased under the November 19, 1982, agreement. In a situation with similar facts, an Arizona court has held that in an installment contract the absence of specific delivery dates does not cause a contract to fail for indefiniteness.

*Autonumerics, Inc. v. Bayer Industries, Inc.,* 144 Ariz. 181, 696 P.2d 1330, 1336 (Ct.App.1984).

Next, appellant points out that the contract allowed it to choose among four horsepower ratings. Because CMW never fabricated a 1000–horsepower pump or a 1600–horsepower pump appellant argues that it is impossible to determine a reasonable price for them under the contract. The evidence showed that it was improbable that Stewart & Stevenson would ever order the 1000–horsepower or 1600–horsepower pumps because the other pumps fulfilled the needs of its customers. Soon after the contract was made a Stewart & Stevenson representative gave a CMW engineer the specifications for the eleventh through fifteenth pumps under the contract and stated that the rest would be the same mix of 1300–horsepower and 1800 horsepower pumps as he had previously designated.

The fact that a court would have to engage in an amount of conjecture to approximate what would have happened had appellants performed the contract does not make the contract fail for indefiniteness. "The test is not certainty as to what the parties were to do nor as to the exact amount of damages due the plaintiff." Tex.Bus. & Com.Code Ann. § 2.204 comment (Tex. UCC) (Vernon 1968). The court did not have to write a contract for the parties, as appellant argues; it had to approximate a remedy under a contract agreed upon. The reason some degree of speculation is necessary to fashion a remedy for appellees is that Stewart & Stevenson breached the contract and refused to specify the ratings and delivery dates as it was obliged to do. One is not excused for a breach of contract resulting in damages simply because those damages may not be established with exact certainty. *Scullin Steel Co. v. Paccar, Inc.,* 708 S.W.2d 756 (Mo.Ct.App.1986). The contract was not too indefinite to enforce. Point of error one is overruled.

The judgment is affirmed.