Argued and submitted February 24, reversed and remanded June 22, 1988

## TRIENCO, INC.,
*Appellant,*

*v.*

## APPLIED THEORY, INC.,
*Respondent.*

(CV 86-0428; CA A43411)

756 P2d 66

David E. Roy, Portland, argued the cause for appellant. With him on the briefs were Ronald T. Adams, James F. Dalton and Rappleyea, Beck, Helterline, Spencer & Roskie, Portland.

James E. Eickelberg, Corvallis, argued the cause for respondent. With him on the brief was Eickelberg & Fewel, Corvallis.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

WARDEN, P. J.

590

## WARDEN, P. J.

Plaintiff appeals from a judgment dismissing its complaint for breach of contract after a trial to the court. It contends that the trial court erred in holding that no contract was formed.

Plaintiff is a Colorado corporation which designs and manufactures an optical scanning device, known as an Edger, for use in the forest products industry. Defendant is an Oregon corporation which sells and installs automated lumber handling systems that use such optical scanning devices. During late 1981 and early 1982, defendant negotiated with the Brazier Lumber Company for the installation of an automated lumber handling system, including an optical scanner, for a mill in Washington. Defendant's proposal included an Edger manufactured by plaintiff. In February, Brazier submitted a purchase order to defendant; defendant's president told plaintiff's president that it had a contract that included an Edger. Plaintiff then started production of an Edger for the Brazier mill. On March 29, 1982, defendant sent a purchase order to plaintiff, confirming that the Edger must "be on site at Spanaway, Washington no later than 7-10-82."

On April 9, 1982, plaintiff sent defendant an invoice for a 10 percent down payment. On the same date, defendant was acquired by U.S. Natural Resources, Inc., which has a subsidiary, IECC, which produces scanner systems competing with those of plaintiff. An IECC scanner system was substituted for the Edger that was to be installed in the Brazier mill. On April 14, 1982, defendant issued a stop work notice to plaintiff. On May 3, 1982, it sent a cancellation notice, stating:

> "Please cancel total order for the 1000E thickness gauging optimizer system. We appreciate your time and effort spent on this order thus far. Please advise us of any cancellation fees. Thank you!"

Defendant informed plaintiff that it would pay an appropriate "cancellation fee," calculated according to Uniform Commercial Code requirements. Despite lengthy settlement negotiations, the parties were unable to agree on the fee, and plaintiff brought this action.

The trial court found that plaintiff's sending an invoice to defendant for the 10 percent down payment "would

probably constitute a written acceptance" of defendant's purchase order, but it held that no contract had been formed, because defendant had not submitted a 10 percent down payment with its purchase order. The court stated that, "until the defendant submitted the required down payment, there was no contract." That conclusion was based on the court's finding that the sales transaction was subject to plaintiff's conditions of sale, which had been used by the parties in their previous dealings. The trial court found:

"These conditions required a deposit of 20 percent (subject to negotiation) of the purchase price before any orders would be scheduled for production. All orders and sales contracts were subject to written approval and acceptance by an authorized employee of [plaintiff]."

On appeal, plaintiff argues, first, that the conditions of sale used in earlier dealings between the parties did not apply to this transaction. We do not, as plaintiff contends, review *de novo*. The trial court's finding that the conditions applied to the transaction in issue is supported by substantial evidence, and we therefore accept that finding.

■ Plaintiff next argues that, even if the conditions applied, the trial court erred as a matter of law in concluding that a contract was not formed. We agree. There was no evidence that the 10 percent down payment was a condition to the formation of a contract. The down payment provision of the conditions of sale simply states that purchase orders will not be scheduled for production before receipt of the down payment. It does not say that no order will be accepted unless accompanied by a deposit. Given the trial court's findings, we conclude, as a matter of law, that the parties formed a contract no later than April 9, 1982, when plaintiff sent defendant an invoice for the 10 percent down payment. That was an acceptance of defendant's offer contained in its purchase order of March 29.

Reversed and remanded.