Argued and submitted December 8, 1989, affirmed on appeal; cross-appeal
dismissed as abandoned July 5, 1990

TRIENCO, INC.,
*Respondent - Cross-Appellant,*

*v.*

APPLIED THEORY, INC.,
*Appellant - Cross-Respondent.*

(CV86-0428; CA A51220)

794 P2d 1239

James Eickelberg, Corvallis, argued the cause for appellant - cross-respondent. With him on the briefs was Eickelberg & Fewell, Corvallis.

Ronald T. Adams, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Rappleyea, Beck, Helterline & Roskie, Portland.

No appearances on cross-appeal.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals a judgment for plaintiff for $63,000 plus prejudgment interest from August 5, 1982. We affirm. Plaintiff filed a notice of cross-appeal but has not pursued it. We dismiss it as abandoned.

In our earlier opinion, *Trienco, Inc. v. Applied Theory, Inc.,* 91 Or App 588, 756 P2d 66 (1988), we reversed the judgment that had dismissed plaintiff's action for breach of contract after a court trial, held that the parties had made a contract and remanded for further proceedings. We set out these facts:

"Plaintiff is a Colorado corporation which designs and manufactures an optical scanning device, known as an Edger, for use in the forest products industry. Defendant is an Oregon corporation which sells and installs automated lumber handling systems that use such optical scanning devices. During late 1981 and early 1982, defendant negotiated with the Brazier Lumber Company for the installation of an automated lumber handling system, including an optical scanner, for a mill in Washington. Defendant's proposal included an Edger manufactured by plaintiff. In February, Brazier submitted a purchase order to defendant; defendant's president told plaintiff's president that it had a contract that included an Edger. Plaintiff then started production of an Edger for the Brazier mill. On March 29, 1982, defendant sent a purchase order to plaintiff, confirming that the Edger must 'be on site at Spanaway, Washington no later that 7-10-82[,]' [and reciting a total contract price of $130,155].

"On April 9, 1982, plaintiff sent defendant an invoice for a 10 percent down payment. On the same date, defendant was acquired by U.S. Natural Resources, Inc., which has a subsidiary, IECC, which produces scanner systems competing with those of plaintiff. An IECC scanner system was substituted for the Edger that was to be installed in the Brazier mill. On April 14, 1982, defendant issued a stop work notice to plaintiff. On May 3, 1982, it sent a cancellation notice[.] * * * Defendant informed plaintiff that it would pay an appropriate 'cancellation fee,' calculated according to Uniform Commercial Code requirements." 91 Or App at 590.

On remand, the parties and the court relied on the transcript from the earlier proceedings, and the court heard additional argument. It found that defendant had breached its

contract to purchase the scanner from plaintiff. It also found that plaintiff is a "lost volume seller"—that is, a seller whose ability to supply its goods exceeds the demand and who, if one buyer breaches, will have permanently lost a sale in its total market. Here, the court found that plaintiff could manufacture more scanners than it could sell and that there was no market for the uncompleted scanner that defendant did not purchase and that plaintiff had built to defendant's specifications. The court ruled, therefore, that plaintiff was entitled to damages for lost profits under subsection (2) of ORS 72.7080:

"(1)    Subject to subsection (2) of this section and to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in ORS 72.7100, but less expenses saved in consequence of the buyer's breach.

"(2)    If the measure of damages provided in subsection (1) of this section is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in ORS 72.7100, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."[1]

To determine the amount of lost profits, the court allocated 40 percent of the contract price to costs and 60 percent to profit and overhead. The court also found that the cost of completion at the time of breach was $6,000. It stated:

"In its second amended complaint, the Plaintiff requested a judgment in the amount of $65,000. During the trial, the Plaintiff moved to amend its complaint to $78,000. The $78,000 represented 60 percent of the $130,000 contract figure. The Court reserved ruling on the Plaintiff's motion, and it became moot with the Court's initial decision in this case. I will deny the Plaintiff's motion to amend, as I am satisfied and do find that the Plaintiff is entitled to a judgment of $63,000. The Court has arrived at this figure by deducting the

---

[1] A lost volume seller is entitled to recover lost profits under ORS 72.7080(2), because damages measured by the difference between the market price and the contract price will not place the seller in as good a position as would performance of the contract. *See Stanfill v. TAT (U.S.A.) Corp.*, 76 Or App 332, 334, 709 P2d 717 (1985).

$6,000 required to complete the system and the $9,000 overhead and profit attributable to that $6,000 from the $78,000 requested by the Plaintiff. Reducing this $15,000 from the prayed for 60 percent of the contract price will insure that the Plaintiff is not being enriched by the breach, and is not receiving an award that is greater than it would have [had] had the contract been performed."

Defendant acknowledges that plaintiff is a lost volume seller and that lost profits under ORS 72.7080(2) is the appropriate measure of damages. It assigns as error, however, that, in calculating damages, the court failed to give defendant "due credit for [the] * * * proceeds of resale" pursuant to ORS 72.7080(2). It argues that plaintiff resold the parts from the uncompleted scanner, because it incorporated the parts into other scanner systems that it manufactured and ultimately sold to other buyers.

■ The court did not err. Application of the "due credit for payment or proceeds of resale" provision of ORS 72.7080(2) will not yield the correct recovery to a lost volume seller because, regardless of resale to a second buyer, the seller has lost one sale and its corresponding profit. There are no Oregon cases on point.[2] Courts in other jurisdictions and commentators have agreed that the provision does not apply to a lost volume seller. *See, e.g., Teradyne, Inc. v. Teledyne Industries, Inc.,* 676 F2d 865 (1st Cir 1982); *National Controls, Inc. v. Commodore Business Machines, Inc.,* 163 Cal App 3d 688, 209 Cal Rptr 636 (1985); *Snyder v. Herbert Greenbaum & Assoc., Inc.,* 38 Md App 144, 380 A2d 618 (1977); *see also* White & Summers, *Uniform Commercial Code,* § 7-13 (2d ed 1980). The provision does apply, however, if the seller elects not to complete manufacture and resells the components for scrap value. The purpose of applying the provision to a components seller is " 'to clarify the privilege of the seller *to realize junk value* when it is manifestly useless to complete the operation of manufacture.' " White & Summers, *supra,* § 7-10 (quoting 1954 Recommendations of the Enlarged Editorial Board; emphasis supplied); *see also R.E. Davis Chemical Corp. v. Diasonics, Inc.,* 826 F2d 678, 684 (7th Cir 1987). Although the seller still loses volume because it loses a sale of completed

---

[2] Although *Stanfill v. TAT (U.S.A.) Corp., supra* n 1, dealt with the issue of "due credit," it did not involve a lost volume seller.

goods, the statute requires "due credit," because the seller has mitigated damages by realizing scrap value on the component parts of the uncompleted goods. *See* White & Summers, *supra,* § 7-10.

■ ■ Here, plaintiff incorporated the parts of the incomplete scanner into other systems that it sold as completed units, which it would have produced and sold regardless of defendant's breach. It did not, however, act as a "components" seller and "realize junk value" by selling those component parts as scrap. Under ORS 72.7080(2), therefore, no credit was due defendant.[3]

■ Defendant also assigns as error that the court used $78,000 as the figure for gross profits when it computed plaintiff's damages of $63,000. Because plaintiff pleaded gross profits of $65,000 and the court denied plaintiff's motion to amend the pleadings, defendant argues that the court should not have used a gross profit figure higher than $65,000 to compute damages. The court explained that it was unnecessary to grant plaintiff's motion to amend, because it was satisfied that $63,000 was the correct damage award—an amount less than the amount for which plaintiff had prayed.

At trial, the court allowed plaintiff to present proof of gross profits of $78,000. At trial and on remand, defendant had the opportunity to rebut that evidence. It chose not to do so. It does not dispute that $78,000 was the gross profit that plaintiff would have made on the contract. Its only quarrel is that the pleading alleged a different gross profit amount. If the court erred at all, it was in not allowing plaintiff to amend its complaint to change the gross profit figure of $65,000 to $78,000. In any event, plaintiff's prayer for $65,000 damages supports the court's award. Nothing that the court did is a ground for reversal.

■ Defendant also assigns as error that the court awarded plaintiff prejudgment interest on $63,000 from August 5, 1982. Prejudgment interest is allowable where the exact amount owed is ascertained or ascertainable by simple computation or by reference to generally accepted standards

---

[3] Although plaintiff may have avoided some costs by incorporating the components from the incomplete scanner into other units that it produced and sold, ORS 72.7080(2) does not take avoided costs into consideration.

and where the time from which the interest runs can be ascertained. *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943); *Gerber v. O'Donnell,* 81 Or App 262, 265, 724 P2d 916 (1986). Defendant asserts that the court improperly ascertained the amount owed, because it failed to calculate the credit that was due defendant for the proceeds from plaintiff's resale of the components. We have determined, however, that no credit was due, and defendant's argument is without merit.

Defendant also argues that the court's selection of August 5, 1982, as the date from which the interest should run was arbitrary. The court did not err. There was evidence to support its finding that the contract terms required payment of the balance within 30 days of shipment and that July 5 was the date agreed on for shipment.

Affirmed on appeal; cross-appeal dismissed as abandoned.