### EVERGREEN INTERNATIONAL AIRLINES, INC., Plaintiff— Appellee,

v.

### ASIANA AIRLINES, Defendant— Appellant.

No. 03–35886.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted May 2, 2005.

Decided June 20, 2005.

---

*** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. *See* 8 C.F.R. § 208.16(c).

J. Michael Hennigan, Esq., Hennigan Bennett & Dorman LLP, Los Angeles, CA, for Plaintiff–Appellee.

C. Dana Hobart, Esq., Hennigan Bennet & Dorman, John F. Daum, Esq., Jane E. Lippman, Esq., O'Melveny & Myers, Linda Kim, William H.Y. Park, Esq., Kwak, Kim and Park, Los Angeles, CA, David A. Bledsoe, Esq., Perkins Coie, LLP, Renee Rothauge, Bullivant Houser Bailey, PC, Portland, OR, for Defendant–Appellant.

Before: HUG, TASHIMA, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Following a jury verdict awarding $16,630,394 in damages to Evergreen International Airlines, the district court denied Asiana Airlines' motion for judgment

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

as a matter of law. Asiana appeals the judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

Oregon Revised Statutes section 72.7080(2), like the Uniform Commercial Code, provides that when the traditional measure of contract damages is not sufficient to "put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer. . . ." *See also Trienco, Inc. v. Applied Theory, Inc.*, 102 Or.App. 362, 794 P.2d 1239, 1241–42 (1990). Although Oregon has not specifically considered whether this lost volume measure of damages applies beyond the specific context of contracts for the sale of goods, most other jurisdictions to consider the issue have extended the theory to include various types of providers of services. *See Gianetti v. Norwalk Hosp.*, 266 Conn. 544, 833 A.2d 891, 895–96 & n. 4 (2003) (employment contracts); *Jetz Serv. Co., Inc. v. Salina Properties*, 19 Kan.App.2d 144, 865 P.2d 1051, 1055–57 (1993) (lessor of laundry equipment); *C.I.C. Corp. v. Ragtime, Inc.*, 319 N.J.Super. 662, 726 A.2d 316, 319–20 (1999) (lessor of vending machines); *Donald Rubin, Inc. v. Schwartz*, 191 A.D.2d 171, 594 N.Y.S.2d 193, 194–95 (N.Y.App.Div.1993) (part-time employment); *Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734, 740 (Tex.App.1992) (part-time employment). *But see Northeastern Vending Co. v. P.D.O., Inc.*, 414 Pa.Super. 200, 606 A.2d 936, 938–39 (1992) (rejecting lost volume damages entirely, whether for sales of goods or otherwise).

The Restatement of Contracts does not limit lost volume damages to sales of goods, but states that *any* injured party able to prove it "could and would have entered into the subsequent contract, even if the contract had not been broken, and could have had the benefit of both" is entitled to lost volume damages. Restatement (Second) of Contracts § 347 cmt. f. Extending the principle of lost volume damages beyond the sales of goods context has not been highly controversial. We see no persuasive evidence that the Oregon courts would reject the logic of most jurisdictions that have considered the issue by limiting lost volume damages to sales of goods. *Cf. Trienco*, 794 P.2d at 1242 (construing Or.Rev.Stat. § 72.7080(2) in accordance with interpretations of the Uniform Commercial Code offered by "other jurisdictions and commentators"). We decline to certify the question to the Oregon Supreme Court, because the question presented does not substantially implicate important state policies. *See Matthews v. Oregon State Bd. of Higher Educ.*, 220 F.3d 1165, 1169 (9th Cir.2000).

Because we are convinced that Oregon would accept a theory of lost volume damages in these circumstances, we cannot say, under an abuse of discretion standard, that the district court erred in instructing the jury that it could award damages under either a lost volume theory or a mitigation theory. *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir.2002), *amended on denial of reh'g by* 335 F.3d 833 (9th Cir.2003) (prejudicial error results from erroneous jury instructions only "when viewed as a whole, [the instructions] fail to fairly and correctly cover the substance of the applicable law."). The instructions accurately stated the law and required the jury to determine whether Evergreen had the capacity to perform all of its obligations, including the Asiana contract, before awarding damages to Evergreen as a lost volume provider of services. *See Stanfill v. TAT (U.S.A.) Corp.*, 76 Or.App. 332, 709 P.2d 717, 719 & n. 3 (1985) ("The trial court instructed the jury in determining damages to decide if the recovery un-

der [the traditional measure of damages] would be adequate and, if not, to apply ORS 72.7080(2).").

■ Asiana additionally argues that Evergreen did not present sufficient supporting data to establish that it was entitled to damages under the lost volume theory, and that the district court erred by denying Asiana's motion for judgment as a matter of law with respect to that issue. We review a district court's denial of a motion for judgment as a matter of law *de novo,* but can reverse the judgment only if "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *White,* 312 F.3d at 1010 (internal quotation marks omitted). Evergreen provided extensive testimony that it had flexibility in scheduling its expansion business and would have scheduled its business around its long-term customer contracts. Evergreen had priority in choosing Air Mobility Command flights, and solicited ad hoc business when it had additional flight capacity. The third side cargo door plane could arguably have been put into operation within thirty to sixty days of its April 2001 acquisition date. There was testimony that even without the third side cargo door plane, there were only a few months where Evergreen did not have the numerical capacity to fly Asiana's business as well as all of the expansion business. The award of $16,630,394 suggests that the jury found Evergreen was not a lost volume seller for the entire period of the breach, but could have accommodated the Asiana business as well as the expansion business for most, but not all, of the breach period. The evidence does not compel a contrary conclusion, and we af-

firm the district court's denial of the motion for judgment as a matter of law.

■ Finally, Asiana argues that Evergreen did not provide evidence of net profits to a reasonable certainty and that the district court improperly instructed the jury that the correct measure of damages was lost revenue less costs avoided. Under Oregon law, only when the court "can say that the evidence is clearly insufficient to establish the claim of lost profits" does the requirement of "reasonable certainty" preclude the jury's determination of the profits. *Welch v. U.S. Bancorp Realty & Mortgage Trust,* 286 Or. 673, 596 P.2d 947, 963 (1979); *see also City of Eugene v. Monaco,* 171 Or.App. 681, 17 P.3d 544, 548 (2000) (reasonable certainty standard requires "reasonable probability" rather than true certainty). Here, the contract specified the block hours Evergreen would fly for Asiana each month as well as the cost per block hour. Evergreen also presented sufficient evidence to establish what portion of its crew-related costs and costs of maintenance would be attributable to the Asiana contract. Although the parties disagree regarding which costs constitute overhead, and which costs should have been deducted, both sides presented experts in support of their respective positions, and the jury credited the testimony of Evergreen's experts regarding the costs attributable to the Asiana contract. Oregon law regarding lost volume damages specifically allows the recovery of reasonable overhead in this situation. *See* Or. Rev.Stat. § 72.7080(2). Thus, the district court correctly instructed the jury to subtract any costs Evergreen avoided as a result of the breach. Any error in referring to "net revenue" instead of "net profits" is harmless.[1]

---

1. Asiana also argues that Evergreen would have incurred expenses transferring planes to different locations, and that those expenses

would have wiped out any profit Evergreen would have made in flying the Asiana contracts. To some extent, this restates the argu-

For the reasons discussed above, we AFFIRM the judgment of the district court in all respects.

ment that Evergreen could not have flown the Asiana business as well as the expansion business. As discussed above, the jury apparently credited Evergreen's testimony that it could have altered its schedule to perform all of its contracts without incurring substantial additional expense.