J. K. RISHEL FURNITURE COMPANY, Plaintiff, *v.* THE STUYVESANT
COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Ninth District,
May 12, 1924.

**Contracts — breach by advertiser of contract with publisher — damages —
Personal Property Law, § 145, relating to " uncompleted goods," not
applicable.**

Where in an action for the balance of the purchase price of goods a counterclaim
is interposed for damages for breach by the plaintiff of a contract to furnish
advertising to the defendant to be inserted any place in the magazine selected
by the publisher, the rule of damages relating to the breach of contracts for
personal services governs and the rule as set forth in section 145 of the Personal
Property Law referring to " uncompleted goods " is not applicable.

The damage sustained by the defendant was the contract price of the advertising
less the cost of producing the particular page containing the advertisement.

The measure of damages for the breach by an advertiser of a contract with a
publisher which provides that the publisher may insert the advertisement in
any place in its magazine, is the difference between the contract price and the
cost of publishing the advertisement. The measure of damages set forth in
section 145 of the Personal Property Law in reference to the breach of a contract
for the sale of " uncompleted goods " is not applicable.

ACTION for goods, wares and merchandise.

*Charles Blandy*, for the plaintiff.

*Kelly & Becker* (*Neal Dow Becker*, of counsel), for the defendant.

GENUNG, J.    Action is brought for goods, wares and merchandise,
consisting of office desks and furniture, sold and delivered by the
plaintiff's assignor, the Alwar Desk Company, to the defendant,
of the agreed price and reasonable value of $2,703.13, of which
amount $1,313.39 has been paid, leaving a balance of $1,388.74.
The plaintiff asks judgment for $1,000.    The defendant alleges that
in June, 1923, the plaintiff's assignor, the Alwar Desk Company
and the defendant entered into an agreement for the sale of certain
office desks and furniture to the value of $2,700, and the said
Alwar Desk Company agreed to purchase from the defendant
twelve full pages of advertising in its magazine, known as " Town
and Country," within one year from September 1, 1923, and Sep-
tember 1, 1924, at the agreed price of $225 a page, or a total of
$2,700, plus any costs or expenses incidental thereto.    The defend-
ant further alleges that, after the publication of two full page
advertisements in said magazine, the said Alwar Desk Company
notified defendant that it discontinued further advertising in defend-
ant's publication, and claims damages in the sum of $2,250, and

demands that such amount be set off against claims of the plaintiff that may be established against it. Upon receipt of this notice from the said Alwar Desk Company, the defendant discontinued the publication of said advertising in its publication.

At the trial it was stipulated by the attorneys for the respective parties that the only question to be determined by the court was as to the proper measure of defendant's damages for the breach of the contract for advertising, and that the evidence be restricted to that question. The plaintiff contends that the rule of damages, as set forth in section 145 of the Personal Property Law (Laws of 1911, chap. 571), referring to " uncompleted goods," is applicable to the facts in this case. The defendant, on the other hand, contends that the rule governing in contracts for personal services is applicable.

The contract for advertising in part resembles the usual contract for goods bargained and sold and, in part, resembles a contract for personal services; in fact, it seems to be more akin to the latter. The logic of the rule, as set forth in section 145 of the Personal Property Law, is that the cost of material and labor, in the manufacture of commodities under a contract, is so large a part of the contract price that the seller of such merchandise, upon being apprised of the buyer's determination not to proceed with the contract, is bound in order to minimize the damages to cease the purchase of further raw material and the manufacture of that on hand. It is elementary that a party seeking to recover upon a contract must not act so as unnecessarily to enhance the damages sustained by him. A party to a contract is entitled to its full benefits. In other words, he is entitled to the excess of the selling price over its cost. The application of the rule, as set forth in section 145 of the Personal Property Law, codifies this elementary proposition. It gives the seller the benefits of its contract without unnecessarily penalizing the buyer.

The contract for personal services does not, as a matter of law, differ from the contract for goods bargained and sold. The distinction is a factual one, in that the law does not take cognizance ordinarily of the expenditures made for subsistence in the carrying out of a contract. The measure of damages upon a breach of a contract for personal services *prima facie* is the contract price. This is the rule because usually there is no deduction to be made for the cost of producing such service. Under the rule, as set forth in section 145 of the Personal Property Law, the deduction from the contract price is the cost of the raw materials purchased and labor furnished less their resale value. Even in a contract

14

for personal services, if the employee was obligated to expend certain money in connection with his employment, these necessary disbursements would have to be deducted from the contract price of the employee's services in an action for wrongful discharge. The occasions, however, in which the employee has to incur expenditures on his own account are comparatively so few, and the amount of money necessarily disbursed is so slight, that the rule of law is that such necessary disbursements must be established by the defendant. On the score of these likenesses, the contract for advertising is more closely related to a contract for personal services than for goods bargained and sold. *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.*, 210 N. Y. 122.

It has been repeatedly held in this jurisdiction that, in contracts for advertising, where the defendant breaches his contract by notifying the plaintiff to discontinue further insertions of the advertising contracted for, the publisher is entitled to recover the profits that he would have made if the defendant had fully performed. This can be gauged in only one way, the contract price less the cost of performance. *Mendell* v. *Willyoung*, 42 Misc. Rep. 210; *Stumpf* v. *Merz*, 46 id. 610. On the second appeal in the last case cited (50 Misc. Rep. 543), the learned court pointed out that the publishers' use of the space, after the advertising was discontinued, should not be deducted from the contract price. The contract there, as in the case at bar, did not provide for printing the advertisement in a specific part of the periodical, but at any place selected by the publisher.

In the case at bar it is clear that the publisher could have taken care of any additional advertising that he was able to secure. It was not a situation where the publisher had a definite number of pages available for advertising, but where the publisher used as many pages for that purpose as he had advertisements to print. In this respect, this type of contract differs from a contract for goods bargained and sold. *Haynes* v. *Nye*, 185 Mass. 507; *Druggists Circular* v. *American Soda Fountain Co.*, 240 id. 531. If, on the other hand, the advertisement is to be printed in a particular position, then, upon the publisher securing another advertisement at the same price for the same space, he is not damaged by the breach of contract on the part of the defendant. *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.*, *supra*. This rule has also been applied in an action to recover the rent for space to be used for billposter advertising. *United Merchants Realty & Improvement Co.* v. *American Bill Posting Co.*, 71 Misc. Rep. 457.

Upon the trial of this action evidence was introduced showing the cost to the publisher of printing the advertisement of the

plaintiff's assignor.   It was shown that for several issues following the one containing the last advertisement of the Alwar Desk Company, the magazine was produced at a loss.   The plaintiff seemed to argue from this circumstance that the defendant had sustained no damage as a result of the breach of contract.   The proper conclusion, however, is contrary.   The damage sustained by the defendant was the contract price of the advertising less the cost of producing the particular page containing the advertisement of the Alwar Desk Company.   In this case the evidence adduced at the trial showed that the cost of producing a page of advertising was nothing, except the time and labor of the publisher, and the cost of publishing a page of editorial matter $55 a page, and of publishing a page of advertising matter was $60 a page for each issue of the publication.   The cost of publishing a page of advertising matter for the remaining ten issues of the publication, as provided in the contract, would be $600.   If we allow to the defendant as damages the balance of the contract price, $2,250, less the sum of $600, there would remain the sum of $1,650 to be set off against the claim of the plaintiff for $1,000.

It follows, therefore, that the defendant in this case is entitled to set off against the claim of the plaintiff the amount claimed by it on the counterclaim, up to the jurisdictional limit of this court.   Judgment is rendered in favor of the defendant dismissing the complaint on the merits.

Judgment accordingly.