36 N.J. Super. 128 (1955)
114 A.2d 875
JERRY LOCKS, PLAINTIFF-RESPONDENT,
v.
GERALD WADE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1955.
Decided June 20, 1955.
*129 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Charles A. Cohen argued the cause for plaintiff-respondent (Mr. William Tomar, attorney).
Mr. Louis B. LeDuc argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendant appeals from a county district court judgment taken against him for breach of contract. Contract and breach are admitted or assumed on appeal; the only issue is damages.
Under the contract plaintiff leased to defendant an automatic phonograph, a juke box, for two years and agreed to supply records and replace parts wearing out. Proceeds of the operation were to be shared on a specified basis, but with a minimum of $20 per week to be paid plaintiff by defendant. Defendant, it is claimed, repudiated the contract; and plaintiff never installed the machine.
The court gave plaintiff judgment for $836  that is, the sum of $20 per week for two years, less apparently the costs *130 plaintiff would have been put to, had he performed the contract, less also depreciation on the machine.
Defendant makes two points. The first rests on plaintiff's testimony that the component parts of the very machine he had intended to lease defendant were, after the breach, rented to others. Defendant argues that the amount plaintiff thus realized should have been credited on the claim sued upon.
Defendant would have us apply here the rule obtaining on the breach of an agreement to lease realty; that is, he claims the measure of the lessor's damages here is the difference between the agreed rental and the rental value of the property. His contention further is that even though under the agreement before us, the lessor is obliged to perform some personal services, he, in order to establish the rental value, has the burden of proving what he received on a reletting. But see McDermott v. DeMeridor Co., 80 N.J.L. 67 (Sup. Ct. 1910  the point was not passed upon on the appeal, 82 N.J.L. 530 (E. & A. 1911)) referring to Milage v. Woodward, 186 N.Y. 252, 78 N.E. 873 (Ct. App. 1906) where a canal boat, captain-owner, crew and horses were hired; note 17 A.L.R.2d 968, 972, 990. All this raises questions we need not consider.
Plaintiff, passing the questions (or most of them), meets the argument by referring to his testimony, not contradicted, that:
"The equipment called for by this agreement was readily available in the market. But locations were very hard to get."
We think the position plaintiff takes on the matter is sound. Where, as here, a plaintiff lessor agrees to lease an article of which the supply in the market is for practical purposes not limited, then the law would be depriving him of the benefit of his bargain if on the breach of the agreement, it required his claim against the lessee to be reduced by the amount he actually did or reasonably could realize on a reletting of the article. For if there had been no breach and another customer had appeared, the lessor could as well have secured another such article and entered into a second lease. In case of the *131 breach of the first lease, he should have the benefit of both bargains or not  in a situation where the profit on both would be the same  be limited to the profit on the second of them.
An illustration with figures may make this more graphic. If the agreed rental under the lease amounts to $2,040, the cost of installation and of furnishing records and parts to $500, and the depreciation on the juke box over the period of the lease to $700, the lessor stands to make $840 on the deal. If another customer presents himself, the lessor will buy another juke box, which he is entitled to enter on his books at cost and depreciate in the same way as he does with the first. Thus, if he makes the same agreement with the second customer, he will make another $840 on the second lease. If the first lessee repudiates his agreement, the purchase of an additional machine will, of course, be unnecessary, because the first machine can be leased to the second customer. In such a situation, under defendant's theory, the lessor would receive as damages for this repudiation only the $2,040 rental agreed on under the first lease, less the $2,040 rental for the same machine under the second lease, or nothing. This would leave the lessee only the $840 profit he will make under the second lease; whereas had the first lessee lived up to his bargain, the lessor's profits would have been $840 on each of two leases, or $1,680.
We conclude that the proper measure of damages here is the difference between the contract price and the cost of performing the first contract, as the court apparently held below. In the case of realty which (unlike the juke box) is specific and not to be duplicated on the market, the lessor could not properly lease it to another for the same period unless the first lease were broken or terminated. In such a case the lessor should not be awarded two profits merely because of the first lessee's default.
So in general we may say that gains made by a lessor on a lease entered into after the breach are not to be deducted from his damages unless the breach enabled him to make the gains. The recoverable damages in the case of a contract are *132 such as may reasonably be within the contemplation of the parties at the time of the contract, Patco Products, Inc., v. Wilson, 5 N.J. 543, 547 (1950); and with that in view, we should not in the present case deny lessor the benefit of his bargain. Contrast Zeliff v. Sabatino, 15 N.J. 70 (1954), referring to the rule obtaining in case of a fraud.
Restatement of Contracts § 336(c) and Illustrations 6 and 7, and 5 Corbin, Contracts, § 1041 (1951) support these propositions. Cf. 3 Williston, Sales (rev. ed. 1948), § 583a. The principles, however, seem not to be widely recognized, but there are cases dealing with various sorts of contracts, which can be said to sustain them. Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (Sup. Ct. 1896); Olds v. Mapes-Reeves Const. Co., 177 Mass. 41, 58 N.E. 478 (Sup. Jud. Ct. 1900); Mt. Pleasant Stable Co. v. Steinberg, 238 Mass. 567, 131 N.E. 295, 15 A.L.R. 749 (Sup. Jud. Ct. 1921); J.K. Rishel Furniture Co. v. Stuyvesant Co., 123 Misc. 208, 204 N.Y.S. 659 (Mun. Ct. 1924); Allen v. Murray, 87 Wis. 41, 57 N.W. 979, 982 (Sup. Ct. 1894); cf. J.A. Laporte Corporation v. Pennsylvania-Dixie Cement Corp., 164 Md. 642, 165 A. 195, 168 A. 844, 108 A.L.R. 1474 (Ct. App. 1933); Tradesman Co. v. Superior Mfg. Co., 147 Mich. 702, 111 N.W. 343, 112 N.W. 708 (Sup. Ct. 1907); Barron G. Collier, Inc., v. Kindy, 146 Minn. 279, 178 N.W. 584 (Sup. Ct. 1920); Ware Bros. Co. v. Cortland Cart & Carriage Co., 210 N.Y. 122, 103 N.E. 890 (Ct. App. 1913); DeMoss v. Beryllium Corp., 358 Pa. 470, 58 A.2d 70, 72 (Sup. Ct. 1948).
These principles lead us logically into questions with which we have no concern here  in particular, the question as to a seller's remedy on a sale of goods where he (like the plaintiff here) has for practical purposes the capacity to supply all probable customers  a matter as to which the law may perhaps be governed by statute, R.S. 46:30-70, or by precedent, 3 Williston, Sales (rev. ed. 1948), § 583a. But see 5 Corbin, Contracts, § 1100, 1039 (1951). Note, too, the change in the Sales Act proposed by the Uniform Commercial Code  Sales § 2-708 (1952), also Comment 2 *133 thereon  a matter apparently overlooked in the 1955 amendment to the section. We limit our opinion to the situation at hand.
Defendant's second point is that the liquidated damage clause in the lease agreement excluded any recovery by plaintiff. The clause reads:
"In the event of a breach of this agreement by the proprietor [defendant], the said proprietor agrees to pay as liquidated damages and not as a penalty or forfeiture, a sum equal to the average weekly share of the Company [plaintiff] prior to the breach, multiplied by the number of weeks remaining in the unexpired term of the agreement, to be paid immediately at the breach of this agreement."
This clause seems to provide for liquidated damages in a case where the machine has been in use for some weeks and a base has thus been established for determining plaintiff's average weekly earnings from the machine. Defendant's argument is that implicit in the clause is an agreement by the seller to waive damages if a breach occurred (as it did) before the machine was installed. We see in this clause no implication that such was the intention of the parties, and find the argument to be without merit.
Affirmed.