OPINION OF THE COURT
Helen E. Freedman, J.
This case addresses the issue whether an advertising agency which has placed print advertisements for a third party is liable to the publisher for payment.
Plaintiff (Fairchild) is a magazine publisher; defendant Rosston, Kremer & Slawter, Inc. (RKS) is an advertising agency *29 which has placed advertising with Fairchild since 1948. In January 1989, RKS forwarded to Fairchild two "insertion orders”, i.e., orders for publication, for the advertising of defendant Fabrican, Inc. (Fabrican), a home furnishings manufacturer which filed for bankruptcy after this action commenced. The insertion orders called for the publication over the course of approximately one year of Fabrican’s advertisements in each of Home Fashions Magazine (HFM) and Retail Home Furnishings Daily (HFD), two Fairchild publications. Both orders stated that Fairchild’s rates would be "less agency commission fifteen per cent on gross”.
On January 3, 1989, Fairchild and Fabrican executed a written agreement to publish Fabrican’s advertising titled HFD Contract (the HFD Contract), comprised of a printed contract with filled-in blanks and typed and handwritten additions to the face and back of the contract. On the back of the HFD Contract, the signature of Daniel Kremer, an account executive with RKS, appears. Fabrican is defined as "Advertiser” in the HFD Contract, and Fairchild is defined as "Publisher”. The HFD Contract provides that the " 'Advertiser’ is herein contracting in his or her own right as principal”. Another term provides that "Publisher agrees to publish such advertising subject to the terms of advertising contracts adopted by [the American Association of Advertising Agencies, Inc. (AAAA)], copyrighted 1974, copy available upon request, which terms are hereby incorporated herein and made part of this contract as though fully set forth on the face thereof.” A document introduced into evidence (exhibit No. 12), entitled "Conditions” and copyrighted 1974 by the AAAA, states in relevant part that:
"The advertising agency placing advertising covered by this contract (hereinafter called the 'Agency’) and the publisher accepting this contract (hereinafter called the 'Publisher’) hereby agree that his contract shall be governed by the following conditions * * *
"Publisher agrees to hold Agency solely liable for payment”.
On February 7, 1989, Fairchild and RKS executed another agreement to publish Fabrican’s advertising titled Home Fashions Textiles Contract (the HFM Contract; the HFD Contract and the HFM Contract, collectively, the Contracts), also comprised of a printed contract with filled-in blanks and typed and handwritten additions on the face and back of the contract. RKS is defined as the "Advertiser” in the HFM Con *30 tract, and Fairchild is defined as "Publisher”. Daniel Kremer again executed the contract on behalf of RKS. Like the HFD Contract, the HFM Contract provides that "Advertiser” is contracting in its right as principal. The HFM Contract also incorporates AAAA advertising contracts terms, using language identical to the HFD Contract’s, except that the HFM Contract refers to contracts "Copyrighted 1956”. Submitted into evidence was exhibit No. 11, titled "Conditions” and copyrighted October 1956 by the AAAA, containing terms with respect to "Agency” liability that are identical to exhibit No. 12.
Fairchild reproduced and published Fabrican’s advertisements in accordance with the terms set forth in the insertion orders, and in accordance with standard billing practices in the trade sent invoices to RKS. Fairchild also made additional oral and written demands of payment by RKS. A statement of account made by Fairchild to RKS and dated January 3, 1990, showed a total due of $85,157. Neither RKS nor Fabrican (now in chapter 11 [11 USC] proceedings in the United States Bankruptcy Court, Eastern District of Massachusetts) ever made payment on the invoices or the statement. On or about June 6, 1990, Fairchild served an amended summons and complaint on RKS and Fabrican, and cross claims were interposed thereafter.[1] A bench trial was held before the court on December 23-24, 1991.
While Fairchild contends that RKS is liable to it for the amounts billed, RKS denies responsibility and contends that Fabrican alone is liable. Fairchild claims that, by executing the Contracts, RKS agreed to be liable for payment, and on that basis alone liability rests with RKS. Fairchild further contends that (a) at the time RKS purchased the space, the custom and usage in the advertising trade was that an agency, and not its client advertiser, was liable to a publisher for advertising costs, and (b) that RKS was aware of such custom and usage.
In opposition, RKS contends that, in ordering advertising space for Fabrican, it was acting as Fabrican’s disclosed agent, and therefore was not liable for its debts. RKS also claims that it is not liable under the Contracts, because of alleged ambiguities with respect to the identity and content of the AAAA contract terms allegedly incorporated by reference *31 therein, and because Daniel Kremer, who signed the Contracts and who testified at trial, was unfamiliar with the AAAA terms and unaware of their alleged incorporation in the Contracts. RKS also disputes that agency liability was the custom and usage of the advertising trade with respect to small agencies like itself.
Alternatively, RKS claims that Fairchild had an obligation to mitigate damages by not printing any further Fabrican advertisements once payment for the first published advertisement was overdue, and also claims that, assuming RKS’ liability, Fairchild should only recover 85% of the amounts billed, representing its lost net profits after deducting RKS’ 15% commission.
DISCUSSION
The general rule is that an agent is not liable for the debts of a disclosed principal. (Clarkson v Krieger, 254 NY 114 [1930].) However, an agent can by agreement substitute its liability for or superadd its liability to that of the principal. (Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1 [1964].) Also, custom and usage of a trade and the circumstances of a transaction can override the general principle that an agent is not liable. (New York Times Co. v Glynn-Palmer Assocs., 138 Misc 2d 862, 864 [Civ Ct, NY County 1988].)
Since it is undisputed that, in its dealings with Fairchild, RKS acted as the disclosed agent for Fabrican, in order to prevail, Fairchild must prove either that RKS agreed to be liable for Fabrican’s debts or that custom and usage rendered RKS liable. After considering all the evidence, the court finds that Fairchild has met its burden of proof on both grounds.
(1) The terms of both the HFD and the HFM Contracts bind RKS. The HFD Contract, although first executed by Fabrican, was signed by Daniel Kremer. The HFM Contract[2] also was executed by Daniel Kremer on behalf of RKS as advertiser. RKS was to be billed under both Contracts. In his capacity as account executive with RKS, Kremer was authorized to execute binding agreements on the company’s behalf.
With respect to the identity of the incorporated terms, the *32 court finds that plaintiffs exhibits 11 and 12 in evidence constitute the incorporated terms contained in the respective Contracts.
The fact that Mr. Kremer was unaware that the AAAA terms regarding agency liability were incorporated by reference in the Contracts does not affect their validity. (See, Angerosa v White Co., 248 App Div 425 [4th Dept 1936], affd 275 NY 524 [1937].) Under these terms, RKS is liable for payment.[3]
Other circumstances surrounding the transaction also contribute to the court’s finding of RKS’ liability under the Contracts. At the time it entered into the Contracts, RKS had been placing advertising with Fairchild for more than 40 years. The testimony of Gary Bugge, Fairchild’s director of credit and collections, indicated that Fairchild’s policy was to hold agencies solely liable and to refuse to accept insertion orders disclaiming agency liability; as Fairchild’s regular customer, RKS knew or should have known of this policy. Bugge further testified that, in deciding whether to accept advertising orders, RKS knew that Fairchild relied upon the credit worthiness of the agency and not the advertiser, as was customary in the print media trade. All bills were tendered to RKS. RKS acknowledged familiarity with the concept of sole agency liability, and did not dispute its liability, despite receiving regular bills, invoices, and dunning letters, until a number of months after executing the Contracts. All these factors combine to estop RKS from denying liability.
(2) Although sharply divergent views on the issue of custom and usage were presented by Harry Paster and Gary Bugge on behalf of plaintiff and Herbert Cohen on behalf of defendant, plaintiff prevails. Paster was executive director of the AAAA, which represents approximately 750 advertising agencies with 80% of the national billing volume. He has publised numerous articles on the subject of agency liability, and drafted the incorporated AAAA terms at issue in this case. Bugge served as chairman of the Media Credit Association, which is the credit reporting arm of the Magazine Publishers of America, and chairman of the Publisher’s Advertising Group, which is *33 affiliated with the New York Credit & Financial Management Association, which in turn is affiliated with the National Association of Credit Management.
Both Paster and Bugge indicated that the custom and practice of the print media advertising industry was and for more than 40 years had been to impose sole liability on advertising agencies. One reason for this practice was that publications customarily relied upon the credit ratings of the agencies, not the advertisers.
Herbert Cohen is chairman of the board of Warren Kremer, CMP, a full-service agency. He had been an art director before becoming chief executive officer of Cohen and Marino, another agency, and is a member of the League of Advertisers, an organization servicing the needs of small agencies. His knowledge derived from work experience in the field. He contended that the obligation to pay was solely upon the client. However, he also admitted to making adjustments on his own insertion orders to insure that the client would be solely liable, and has never been confronted with a nonpaying client in a situation analogous to this case.
Based on the specific experiences, degrees of expertise, and degrees of impartiality of the various witnesses, the court credits plaintiffs’ experts on the subject of custom and usage in the trade, and finds accordingly on that issue.
For all the reasons stated above, the court finds in favor of Fairchild on the issue of liability.
DAMAGES
The court rejects RKS’ contention that Fairchild had an obligation to mitigate damages by ceasing to run Fabrican’s advertisements once payment was first demanded but not received. Fairchild had an unlimited amount of advertising space to sell. Discontinuing Fabrican’s advertisements would simply have resulted in lost profits. (See, 22 Am Jur 2d, Damages, § 510.)
The measure of damages is Fairchild’s contract price less the cost of performance. (See, Rishel Furniture Co. v Stuyvesant Co., 123 Misc 208 [NY City Mun Ct 1924].) Since the parties agreed that RKS was to receive a 15% commission for placing Fabrican’s advertisements, Fairchild is awarded a judgment of 85% of $85,157, or $72,383.45, plus interest from January 31, 1990.

. Since Fabrican has filed for bankruptcy, all claims against it are now stayed.

. The HFM Contract is titled "Home Fashions Textiles Contract”. According to trial testimony, HFM was previously named Home Fashions Textiles. Clearly it was the intent of the parties to memoralize their agreement with respect to placing and publishing Fabrican’s advertisements in HFM by executing the HFM Contract.

. RKS contends that the incorporated term "Publisher agrees to hold Agency solely liable for payment” is not binding on RKS because the terms refer only to Fairchild’s agreement, and not RKS’. However, the incorporated terms’ prefatory language states that "[t]he * * * Agency * * * and the * * * Publisher * * * hereby agree that this contract shall be governed by the following conditions”. This is evidence that both parties are bound.