707 A.2d 1391

ILDA AND MANUEL DIAS, PLAINTIFFS–APPELLANTS, v. A.J. SEABRA'S SUPERMARKET, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1998—Decided April 15, 1998.

Before Judges BAIME, WEFING and BILDER.

*Christopher L. Musmanno* argued the cause for appellants (*Maloof, Lebowitz, Connahan & Oleske,* attorneys; *Mr. Musmanno,* on the brief).

*Paul Spina* argued the cause for respondent (*Paul Seligman,* attorney; *Mr. Seligman* and *Manuel J. Almeida,* on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Plaintiff appeals from a judgment for $17,500 entered in her favor on April 30, 1997. We agree with her contention that the trial court erred in its instructions to the jury and we reverse.

Plaintiff Ilda Dias and her husband Manuel went to A.J. Seabra's Supermarket on Lafayette Street in Newark, New Jersey on January 25, 1996. The day was clear and cold. There had been a large snow storm two weeks earlier and it had rained the previous day. On the day in question, the temperature had not gotten above freezing.

When they finished their marketing and left the store, Mr. Dias told his wife to wait with the shopping cart while he went to retrieve their car from the parking lot. He pulled up to the curb and began to load the parcels. He told Mrs. Dias to get into the car. She went to do so and slipped and fell, apparently on a patch of ice that had accumulated on the sidewalk. Both Mr. and Mrs. Dias, and John Santos, a store employee who came to her aid, testified that water was dripping from an overhang on the store's roof onto the sidewalk. Santos testified that he had, sometime earlier, spread salt on the ice which had formed.

Mrs. Dias suffered a comminuted fracture of her right knee at the tibial plateau. She underwent surgery at St. James Hospital to repair the fracture; her hospital stay, however, was extended for nearly two months when she developed an infection. After her release from the hospital, she had a second surgery to remove the screws that had been used in the first surgery. She was left with a limp and required the aid of a cane. The parties stipulated to her medical expenses of $106,006.67; of that amount, $29,900.63 was not covered by insurance.

When the trial court instructed the jury on the various items it could consider if it determined that plaintiffs were entitled to an award of damages, it told the jury they could only consider medical expenses of $29,900.63. The jury found the parties to be equally at fault and awarded a verdict of $35,000, which resulted in a net judgment of $17,500. The trial court denied plaintiffs' motion for a new trial or additur and noted that plaintiffs' credibility was subject to challenge. The jury awarded zero to Mr. Dias on his *per quod* claim. Plaintiffs do not appeal from that.

We are satisfied that when the trial court told the jury that the most it could award plaintiffs for these medical bills was $29,-900.63, rather than $106,006.67, it erred and that that error had the capacity to prejudice the plaintiffs.

*N.J.S.A.* 2A:15–97 provides in pertinent part:

In any civil action brought for personal injury ... if a plaintiff receives ... benefits for the injuries ... from any other source other than a joint tortfeasor, the benefits

... shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff....

The purpose of the statute is clear: to prevent a double recovery, in excess of a party's actual loss. *Adamson v. Chiovaro*, 308 *N.J.Super.* 70, 78–79, 705 *A.2d* 402 (App.Div.1998); *Thomas v. Toys "R" Us, Inc.*, 282 *N.J.Super.* 569, 584, 660 *A.2d* 1236 (App. Div.), *certif. denied*, 142 *N.J.* 574, 667 *A.2d* 191 (1995).

We consider the procedure contemplated by the statute to be equally clear. The statute places no restriction on a party introducing, for the jury's consideration, evidence of the total amount of medical bills incurred. Any required adjustment in a party's ultimate recovery is to be made by the court, after the jury has considered the full amount incurred. *Thomas v. Toys "R" Us, Inc., supra*, is an example of the correct methodology. In that case the trial court, after return of the jury's verdict, modified the sums awarded by the jury, which were based on total losses, not just unreimbursed losses.

The Legislature chose when it enacted *N.J.S.A.* 2A:15–97 to adopt the procedure of post-verdict modification, rather than simply declaring that evidence of such reimbursed expenses would be inadmissible, the procedure which it had earlier selected for Personal Injury Protection benefits, *N.J.S.A.* 39:6A–12. We are not free to disregard the distinction the Legislature has so clearly drawn.

We are satisfied that this error did have the capacity to prejudice the jury's fair consideration of plaintiffs' injuries. We reach this conclusion in light of the fact that plaintiffs' counsel opened to the jury on the basis that his clients' medical expenses were in excess of $106,000. Although he tried, in his summation, after the trial court made its ruling, to explain the disparity, we have little doubt that the jury could well have been left with the impression that plaintiffs had been improperly seeking more than they were entitled to in terms of their medical expenses. Such an impression was unwarranted.

The court's error goes only to the amount of damages plaintiffs are entitled to receive. Since it does not affect the verdict on liability, the new trial shall be on damages only.

Reversed and remanded for further proceedings.