726 A.2d 316 (1999)
319 N.J. Super. 662
C.I.C. CORP., a New Jersey corporation, Plaintiff-Appellant,
v.
RAGTIME, INC. and Donald Tabatneck t/a Ragtime, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1999.
Decided April 1, 1999.
*317 Keith N. Biebelberg, Millburn, for plaintiff-appellant (Biebelberg & Martin, attorneys; Mr. Biebelberg, on the brief).
David J. Tencza, Paterson, for defendantsrespondents (Walter J. Tencza, attorney; David J. Tencza, on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff C.I.C. Corp., a New Jersey corporation, appeals from a judgment entered upon a jury verdict awarding it damages of one dollar on its contract claim against defendants, Ragtime, Inc., and Donald Tabatneck. It also appeals from the subsequent order of the trial court denying its motion for a new trial on damages. We find plain error in the court's instructions to the jury respecting damages and accordingly reverse and remand for a new damages trial.
Plaintiff is in the vending machine business. Pursuant to written contracts with owners of various types of retail establishments, it places a variety of coin-operated machines, which it owns, on their premises, including cigarette machines, jukeboxes and game machines. If the machine sells a product, plaintiff keeps the machine stocked. It also services the machines on an on-call basis. The coins are removed by its collectors on a bi-weekly basis and the revenue is shared between plaintiff and the owner of the premises in accordance with the terms of their agreement. Defendant Donald Tabatneck is the proprietor of a so-called go-go bar in West Paterson owned by his corporation, 821 McBride Avenue Corporation, and operated under the trade name Ragtime. He had had plaintiff's coin-operated machines on his premises since the late 1970s or early 1980s under a series of consecutive contracts.
The controversy between the parties arose out of the five-year contract executed by them on October 13, 1994. The agreement covered a cigarette machine, a jukebox, a pool table, and a pinball machine, which had been on the premises for some time.[1] Pursuant to the terms of the agreement, and at defendant's request, plaintiff also loaned defendant $3,500 by way of an advance on his portion of the future revenues at ten percent interest. In the following month, defendant repaid the loan and the four machines were removed. The parties sharply disputed the circumstances and import of these events. According to plaintiff's office manager, Kathleen Strojny, who had dealt with defendant both in the negotiation of the contract and thereafter, defendant had telephoned her to advise that he wished to repay the loan. He also advised her that he was having trouble *318 with the municipality over his operation of the go-go bar and was planning to renovate his establishment for conversion to a family restaurant. He therefore requested that the machines be temporarily removed during the renovations, to be returned when they were completed. She agreed. According to defendant, he was dissatisfied with plaintiff's servicing of the machines, and when he so advised Strojny, she agreed to rescind the contract and remove the machines provided he forthwith repaid the $3,500 loan. He further asserted that he never intended to and in fact did not change the go-go bar use of the premises and admitted that after the breach, he had purchased and installed at the bar his own cigarette vending machine, a coin-operated pool table, and a jukebox to "back-up" his new compact disc player.
The jury, by its answers to special interrogatories, found that defendant had breached the contract necessarily, therefore, rejecting his version of these events. That jury finding is more than amply supported by the record and is not challenged on appeal.
The problem here is only as to damages. Strojny explained plaintiff's computerized record-keeping system and its printouts by which she was able to determine the average net monthly revenue earned by plaintiff from each of the four machines that it had placed in defendant's premises during the twelvemonth period preceding the breach. Its net average monthly revenue from the cigarette machine, based on an average monthly sale of 242 packs, was $254. The arrangement with respect to the jukebox was a flat $15 weekly rental sum paid by defendant to plaintiff or, roughly, a monthly net revenue of $60. The monthly revenue from the pinball machine and the pool table was shared between the parties, and plaintiff's average total net for the two machines totaled $386. Strojny therefore calculated plaintiff's net lost monthly revenue over the life of the contract at $700. Over the course of the 59 months of the term remaining on the lease at the time of the breach, the total loss of net revenue was, therefore, $41,000. That was the sum plaintiff sought to recover.
Defendant did not dispute Strojny's calculations respecting the revenue earned by the four machines during the year prior to the breach. The thrust of his defense to the damages claim was his assertion that plaintiff was required to mitigate damages and had failed to do so. And therein lies the error that tainted this damages verdict. In sum, as a matter of law, plaintiff was not required to mitigate.
We consider that legal issue in the context of this record. First, defendant, on his cross-examination of Strojny, attempted to elicit from her information as to what had happened to the four machines after they were removed from his premises. All she could say is that they had been taken to plaintiff's warehouse and that another customer would, in the normal course of business, have been sought for them. She was unable to say, beyond speculation, if these machines had ever been placed with another customer and, if so, how long it had taken to do so. The mitigation issue was next referred to by the court in overruling defendant's objection to the admission into evidence of Strojny's computer printout respecting the average monthly revenue earned by each machine in the year preceding the breach. Although permitting its admission, the court noted that:
It can be argued that there were very effective arguments made against it, for example, that the equipment was used by somebody else within a few months and the plaintiff[2] hasn't been able to say, you know, what happened to the equipment and whether it was used by another company or not.
Evidently, then, the judge was of the view that mitigation was an applicable doctrine here, and plaintiff did not take exception to these comments, perhaps because he had prevailed on the evidence issue that provoked those comments.
*319 The mitigation issue was again referred to in both summations. Defendant's attorney told the jury that he believed the judge would instruct it on mitigation of damages and then referred to Strojny's testimony respecting her lack of knowledge as to the disposition of the equipment after its removal from defendant's premises. He concluded these remarks with this argument:
Because they want $41,400 from Mr. Tabatneck, if you find he breached his contract, and it didn't workdidn't go as Mr. Tabatneck said. They want you to give them 41,000what is it again? Four hundred dollars. But they don't tell you whether they made earnings and what earnings they made on those machines when they took them out of there or when it all started. They're going to ask you to take a shot in the dark. That's what they're asking you. Pick a number, pick 41,400, pick any number you want. Do you understand what I'm saying? Put in the position that this defendant is put in, he's asked to pay forty-one.
In his ensuing summation, plaintiff's attorney argued that there was no duty to mitigate. This is what he said:
But let's assume that eventually we were able to do that [place the equipment elsewhere]. Does that mean that we don't have losses? Of course not. We have the right to have two establishments, Ragtime plus the next one, a thousand establishments. Now granted, we would have to buy a couple more machines to put into these other establishments, but he is asking you to believe that, if we found another establishment, that wipes out our monetary losses.
His position is completely wrong. It's as wrong as, if somebody signs a contract to buy a television set and refuses to pay for it and doesn't want the TV set, if the television seller wants to sue him, they can't say, well, you probably sold your new TV set to someone else. The response is going to be the same as I'm telling you. But what if we did sell that TV to someone else? We have a right to sell TVs to two people, so we want our lost profits from your transaction, Mr. Tabatneck.
Unfortunately, neither attorney requested a charge respecting the duty to mitigate despite defendant's clear assertion that there was such a duty as a matter of law and plaintiff's equally clear assertion that there was not. The judge then instructed the jury generally as to the primary function of compensatory damages, namely, making the injured party whole, and then had this to say:
The plaintiff presented the testimony of Miss Strojny with regard to the records of the corporation and what the losses were with regard to each machine. You have an exhibit that goes through that testimony, which reveals that testimony, that testimony as to what the end result was with regard to each machine. You also have the cross-examination of the defendant, which pointed out ways which may or may not have mitigated or lessened those damages. So what those damages are is for you to decide, according to the law that I just described.
Now in arriving at an amount of any loss of profits sustained by the plaintiff, you may consider any past earnings of the plaintiff in its business, as well as any other evidence bearing upon the issue. So youthe testimony that you heard from Miss Strojny about what happened in the immediate past and you have to make a determination as to whether that can be projected reasonably into the future or not. That's the kind of determination that you have to make if you get to the issue of damages in this case. [Emphasis added.]
Thus, although not expressly instructing the jury with respect to the doctrine of mitigation or its applicability here, the court nevertheless clearly advised the jury that in fixing damages, it could consider what plaintiff did or should have done to "mitigate or lessen damages."
That instruction was in error. This is clearly a "lost volume" situation or, at least, the jury could have so found. As explained by Restatement (Second) of Contracts § 347 comment f (1981):
Whether a subsequent transaction is a substitute for the broken contract sometimes raises difficult questions of fact. If the injured party could and would have *320 entered into the subsequent contract, even if the contract had not been broken, and could have had the benefit of both, he can be said to have "lost volume" and the subsequent transaction is not a substitute for the broken contract. The injured party's damages are then based on the net profit that he has lost as a result of the broken contract. Since entrepreneurs try to operate at optimum capacity, however, it is possible that an additional transaction would not have been profitable and that the injured party would not have chosen to expand his business by undertaking it had there been no breach. It is sometimes assumed that he would have done so, but the question is one of fact to be resolved according to the circumstances of each case.
And as further explicated by the Restatement, supra, § 350 comment d (1981):
The mere fact that an injured party can make arrangements for the disposition of the goods or services that he was to supply under the contract does not necessarily mean that by doing so he will avoid loss. If he would have entered into both transactions but for the breach, he has "lost volume" as a result of the breach. See Comment f to § 347. In that case the second transaction is not a "substitute" for the first one.
We adopted the Restatement view in Locks v. Wade, 36 N.J.Super. 128, 114 A.2d 875 (App. Div.1955), a case involving the remarkably similar circumstance of a jukebox rental. Relying on the analogous section of the first Restatement of Contracts § 336 comment c, we held that:
We think the position plaintiff takes on the matter is sound. Where, as here, a plaintiff lessor agrees to lease an article of which the supply in the market is for practical purposes not limited, then the law would be depriving him of the benefit of his bargain if on the breach of the agreement, it required his claim against the lessee to be reduced by the amount he actually did or reasonably could realize on a reletting of the article. For if there had been no breach and another customer had appeared, the lessor could as well have secured another such article and entered into a second lease. In case of the breach of the first lease, he should have the benefit of both bargains or notin a situation where the profit on both would be the samebe limited to the profit on the second of them.

[Id. at 130-131, 114 A.2d 875.]
As we further pointed out in Locks, the lostvolume rule has been recognized throughout the country. Id. at 132, 114 A.2d 875. See also Jetz Service Co. v. Salina Properties, 19 Kan.App.2d 144, 865 P.2d 1051 (1993); Seaboard Music Co. v. Germano, 24 Cal. App. 3d 618, 101 Cal.Rptr. 255 (1972); Wired Music, Inc. v. Clark, 26 Ill.App.2d 413, 168 N.E.2d 736 (1960). Moreover, although the parties have not raised the issue, we note that by L. 1994, c. 114, § 1 effective January 10, 1995, the Legislature adopted the Uniform Commercial CodeLeases, N.J.S.A. 12A:2A-101 to -532. Its provisions are instructive here. We acknowledge that Chapter 2A of the Code is not applicable to leases of goods entered into prior to its effective date and is hence not applicable to this lease. Nevertheless, we note that the lessor's remedies in the event of default provided for by N.J.S.A. 12A:2A-528(1) expressly include the present value of the total rent for the remaining term. N.J.S.A. 12A:2A-528(2) further provides that:
If the measure of damages provided in subsection (1) is inadequate to put a lessor in as good a position as performance would have, the measure of damages is the present value of the profit, including reasonable overhead, the lessor would have made from full performance by the lessee, together with any incidental damages allowed under 12A:2A-530, due allowance for costs reasonably incurred and due credit for payments or proceeds of disposition.
We think it plain that the proofs here would have supported a jury finding that plaintiff had a warehouse full of a variety of coin-operated machines and could have placed as many as it could have found customers for. Thus, even if it eventually placed with another customer the machines removed from defendant's premises, it still would have lost the benefit of its bargain with defendant since, in that case, it would have made two deals, not just the second. We also think it plain that the judge's *321 charge, to the extent it referred to mitigation and failed to explain the lost-volume rule, clearly misled and misinformed the jury.
We recognize that plaintiff failed to request a lost-volume instruction and failed, as well, to object to the instructions given. The plain-error rule, therefore, applies, and we must determine whether the erroneous instructions produced an unjust result or prejudiced substantial rights. See, e.g., Mehlman v. Mobil Oil Corp., 153 N.J. 163, 194, 707 A.2d 1000 (1998); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997); R. 1:7-5. Obviously a charge that has the capacity to mislead, misinform and confuse the jury with respect to the admeasurement of damages and it evidently did so heremeets the plainerror standard. See, e.g., Fischer v. Canario, 143 N.J. 235, 251-252, 670 A.2d 516 (1996); Dias v. A.J. Seabra's Supermarket, 310 N.J.Super. 99, 101-102, 707 A.2d 1391 (App.Div.1998); Kurak v. A. P. Green Refractories Co., 298 N.J.Super. 304, 328-332, 689 A.2d 757 (App.Div.), certif. denied, 152 N.J. 10, 702 A.2d 349 (1997).
We need not speculate as to why the jury awarded plaintiff only one dollar in damages.[3] We are, however, persuaded that the error in the instructions deprived plaintiff of its right to have a properly informed jury address the damages issue. It is, therefore, entitled to a new trial on damages. Since, moreover, the error did not at all affect the jury's liability verdict, it is only the damages issue that need be retried. See, e.g., Caldwell v. Haynes, 136 N.J. 422, 441, 643 A.2d 564 (1994); Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 538-539, 538 A.2d 346 (1988).
The judgment and order denying a new trial are reversed, and we remand for a new trial on damages only.
NOTES
[1] A fifth machine, a dart game, had apparently been placed in defendant's premises, but required removal by plaintiff since the local ordinance limited the machine owner to two game machine licenses per premises.
[2] The transcript reads "defense" instead of "plaintiff," but it is obvious from the context of the judge's remarks that either there was an error in transcription or that the judge inadvertently misspoke.
[3] Although the trial judge, in denying the new trial motion was of the general view that the proofs might have supported a one dollar award, we are not persuaded by our review of the record that that is so. In any event, we do not consider the new trial motion as implicating the weight of evidence since we base our reversal on error in the charge. We need not, therefore, defer to the trial court's appraisal of the evidence in light of its "feel of the case." See, e.g., Carey v. Lovett, 132 N.J. 44, 622 A.2d 1279 (1993).